# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSIE D. PHAM,<br><br>                                    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                                    Defendant. | Case No.:  15-cv-02107-BAS (DHB)<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 22);**<br><br>**(2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT (ECF NO. 30); AND**<br><br>**(3) REMANDING FOR FURTHER PROCEEDINGS** |

On September 22, 2015, Plaintiff Rosie D. Pham ("Plaintiff") filed a complaint requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner" or "Defendant") regarding denial of Plaintiff's claim for disability benefits.  (ECF No. 1.)  On March 22, 2016, Plaintiff filed a First Amended Complaint pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c) of the Social Security Act requesting judicial review of the final administrative decision of the Commissioner regarding denial of Plaintiff's claims for disability insurance benefits and supplemental

security income benefits.  (ECF No. 9.)  On June 10, 2016, Defendant filed an Answer and the Administrative Record ("A.R.").  (ECF Nos. 14, 15.)

On January 17, 2017, Plaintiff filed a motion for summary judgment seeking reversal of the Commissioner's final decision and ordering the payment of benefits.  (ECF No. 22.)  In the alternative, Plaintiff asks the Court to remand for further administrative proceedings.  (*Id.*)  Plaintiff contends the Administrative Law Judge ("ALJ") committed reversible error by improperly considering the testimony of Plaintiff.  (ECF No. 22-1 ("Mot.") at 2-3.)  On May 12, 2017, Defendant filed an opposition to Plaintiff's motion for summary judgment and a cross-motion for summary judgment.  (ECF Nos. 30, 31.)[1]

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court **GRANTS** Plaintiff's motion for summary judgment**, DENIES** Defendant's cross-motion for summary judgment, and **ORDERS** the case **REMANDED** to the ALJ for further proceedings.

## I.  PROCEDURAL BACKGROUND

On April 8, 2011, Plaintiff filed an application for disability insurance benefits and an application for supplemental security income benefits, in which she states her disability began on March 1, 2011.  (A.R. 150-166, 192.)  In her applications, Plaintiff alleges her disability is due to a brain tumor.  (A.R. 204.)  Plaintiff's claims were initially denied on August 24, 2011, and upon reconsideration on March 15, 2012.  (A.R. 41-91.)  Thereafter, on April 19, 2012, Plaintiff requested a hearing before an ALJ.  (A.R. 92-93.)  On May 14, 2014, ALJ James P. Nguyen held a hearing regarding Plaintiff's application for benefits.  (A.R. 23-40.)  On June 13, 2014, the ALJ rendered an unfavorable decision and concluded that Plaintiff was not entitled to benefits. (A.R. 7-21.)  The ALJ's decision became final on July 23, 2015, when the Appeals Council denied Plaintiff's request for review.  (A.R. 1-6.)

---

[1]  Although filed separately on the docket, Defendant's cross-motion for summary judgment and Defendant's opposition to Plaintiff's motion for summary judgment are identical.

Thereafter, Plaintiff filed a complaint in the above-entitled matter on September 22, 2015. (ECF No. 1.)

## II.   LEGAL STANDARDS

### A.   Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must demonstrate the following two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the applicant incapable of performing the work he previously performed or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A). A claimant must meet both requirements to be classified as disabled.  *Id.*   The Commissioner assesses a claim of disability through a five-step sequential evaluation process.  The five steps are:

1.  Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.   If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.   *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
3.  Does the impairment "meet or equal" one of the list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
4.  Is the claimant able to do any work that he or she has done in the past?  If so, the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamonte v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).  If the claimant is able to do other work, then the Commissioner must "show that the claimant can perform some other work that exists in

'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience." *Tackett*, 180 F.3d at 1099-00 (citing 20 C.F.R. § 404.1560(b)(3)). If an applicant is found to be disabled or not disabled at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (citing *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).

Although the ALJ must assist the claimant in developing the record, the claimant bears the burden of proof during the first four steps. *Tackett*, 180 F.3d at 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). The Commissioner bears the burden of proof at the fifth step. *Id.* at 1100.

## B.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or it is not supported by substantial evidence.") (citing *Tidwell*, 161 F.3d at 601).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at

---

[2]     The RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC is "based on all the relevant evidence" in the case record. *Id.*

1457 (citing *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993)).  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).

The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing of the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.") (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).  The "substantial evidence test for upholding factual findings is 'extremely deferential to the factfinder.'"  *Rhine v. Stevedoring Servs. of Am.*, 596 F.3d 1161, 1165 (9th Cir. 2010) (quoting *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997)).  The court's "'task is not to reweigh the evidence, but only to determine if substantial evidence supports the ALJ's findings.'"  *Id.* (quoting *Metro. Stevedore Co.*, 521 U.S. at 149.)  However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision "if the proper legal standards were not applied in weighing the evidence and making the decision."  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

Section 405(g) permits the Court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  *Id*.

## III. FACTUAL BACKGROUND

Plaintiff alleges she became disabled on March 1, 2011.  (A.R. 150-166, 192.)  In her application, Plaintiff alleges her disability is due to a brain tumor.  (A.R. 204.)  Prior

to her disability, Plaintiff alleges she worked as a caregiver and a cashier at a gas station. (A.R. 205.)

### A. Medical Evidence

#### 1. <u>Treating Physicians</u>

##### a. *Sharp Memorial Hospital*

Sharp Memorial Hospital provided treatment records from March 25, 2011 to May 16, 2011. (A.R. 253-315.) Plaintiff arrived at Sharp Memorial Hospital on March 25, 2011 complaining of nausea, as well as one month of constant abdominal pain and intermittent vomiting. (A.R. 306-315.) She was diagnosed with acute colitis, acute abdominal pain, acute dehydration, acute vomiting, and an acute urinary tract infection. (A.R. 308.) She was treated and discharged in stable condition with prescriptions for Cipro, Flagyl, and Phenergan. (A.R. 308.)

On April 29, 2011, Plaintiff arrived at the emergency room with an MRI showing a left pontine brain tumor with left to right shift. (A.R. 277-305, 317.) Plaintiff had a large mass in her left pons extending to the right side of her brain that was 3 cm by 3 cm by 2.5 cm. (A.R. 277.) She was experiencing facial numbness, slurred speech, nausea and vomiting, difficulty swallowing, a mild left headache, and visual deficits on her left side. (A.R. 277.) The doctors found no evidence for infectious origins of her brain tumor, but found surgical intervention necessary. (A.R. 278, 318-329.) Plaintiff was discharged on May 4, 2011, with brain surgery scheduled for May 11, 2011. (A.R. 278.)

Plaintiff was admitted for biopsy and debulking surgery on May 10, 2011 and discharged on May 16, 2011. (A.R. 253-276.) Dr. Donald Blaskiewicz performed the surgery. (A.R. 254.) Although the tumor was significantly reduced in volume, a mass remained. (A.R. 259.) Post-surgery, Plaintiff was given physical therapy and occupational therapy while hospitalized, and progressed well. (A.R. 254.) A radiation-oncology consultation was requested. (A.R. 259.) A pathology report found no malignant features in the tumor. (A.R. 272.) Plaintiff was discharged to her home with home health. (A.R. 254.)

On July 15, 2011, Plaintiff underwent a soft tissue procedure at Sharp, performed by Dr. Blaskiewicz. (A.R. 360-362.)

On July 20, 2011, Plaintiff was seen at Sharp Memorial Hospital complaining of bleeding from her biopsy site. (A.R. 355-359, 362-368.) She was given information for treating a hematoma and discharged the same day with prescriptions for Keflex, Cipro, and Vicodin. (A.R. 355-356, 366.)

### b. *Le Huong Nguyen M.D.*

Plaintiff's primary physician is Dr. Nguyen. She began seeing him in September 2010. (A.R. 350.) Dr. Nguyen referred Plaintiff to the emergency room on March 23, 2011, noting pain and vomiting and the fact Plaintiff had lost ten pounds since March 9, 2011. (A.R. 349.) Dr. Nguyen referred Plaintiff to a clinic on April 24, 2011, as she was continuing to lose weight and was non-responsive to medication. (A.R. 349.)

Plaintiff saw Dr. Nguyen in May, June, July and August 2011 for follow-up appointments after her brain surgery, at which she complained of fatigue, mild headaches, left eye and head pain, dizziness, and blurred vision. (A.R. 316, 373-376.) In May 2011, Dr. Nguyen filled out a Doctor's Certificate for Plaintiff's State claim for disability insurance benefits. (A.R. 350.) He stated that Plaintiff's disability began on March 1, 2011 and he anticipates releasing her to return to her regular work on July 1, 2011. (A.R. 350.) Plaintiff's disabling conditions included headaches, dizziness, blurred vision, vomiting, and a brain tumor. (A.R. 350.)

Plaintiff saw Dr. Nguyen again in November and December 2011, with Plaintiff complaining of left arm, shoulder, leg, and ear pain, and tongue numbness. (A.R. 401.) In November 2011, Dr. Nguyen diagnosed Plaintiff with tendonitis and a frozen shoulder on the left side. (A.R. 401.) In February 2012, Plaintiff saw Dr. Nguyen again, and complained of dizziness, and left arm, neck, and knee pain. (A.R. 400.)

In November 2011, Dr. Nguyen filed out a Physician's Supplementary Certificate stating that Plaintiff had been diagnosed with a brain tumor and a frozen shoulder, and was experiencing affects from brain tumor surgery, weakness, stiffness, and pain of the left arm

and shoulder, numbness of the face and tongue, and a left frozen shoulder. (A.R. 392.) Dr. Nguyen anticipated that Plaintiff would be able to return to her regular work on February 7, 2012. (A.R. 392.)

### 2. Examining Physicians

#### a. *Seagate Medical Group*

On February 11, 2012, Plaintiff visited Dr. Philip Wirganowicz, an orthopaedic surgeon, at Seagate Medical Group for a complete orthopedic evaluation. (A.R. 393-397.) Plaintiff complained of left-sided neck and left shoulder pain following her surgery. (A.R. 393.) Plaintiff was accompanied by her husband on the visit. (A.R. 393.)

Plaintiff reported she was experiencing occasional episodes of radiation of pain down into her left arm. (A.R. 393.) Plaintiff denied any weakness, however she reported feeling numbness and tingling in her left arm. (A.R. 393.) Her symptoms were described as intermittent, and the pain described as "throbbing and electrical in nature." (A.R. 393.) Plaintiff was not using any braces about her neck, but she reported using a cane for ambulation. (A.R. 393.)

Dr. Wirganowicz found that there was no muscular atrophy in Plaintiff's upper and lower extremities, and that passive range of motion of the left shoulder was full. (A.R. 397.) He added that there were confounding factors that made interpretation difficult. (A.R. 397.) He found decreased sensation circumferentially in the left arm in a non-dermatomal pattern, and muscular weakness throughout the entire left arm and shoulder associated with giving way that appears volitional in nature. (A.R. 397.)

Ultimately, Dr. Wirganowicz found that Plaintiff should be able to lift twenty-five pounds frequently, or fifty pounds on an occasional basis. (A.R. 397.) Plaintiff should also be able to sit, stand, or walk for a duration of six hours in a normal workday with appropriate breaks. (A.R. 397.) Plaintiff does not require the use of assistive devices for ambulation. (A.R. 397.) Lastly, Dr. Wirganowicz found that Plaintiff may use her upper extremities for gross motor and fine manipulative movements. (A.R. 397.)

Plaintiff was also given a visual acuity test by Seagate Medical Group using the Snellen chart. (A.R. 398.) The test found that Plaintiff "cannot visually go from one place to another without assistance." (A.R. 398.)

### 3. Non-Examining Physicians

#### a. *Pamela Ombres, M.D.*

Dr. Ombres reviewed Plaintiff's medical records on her initial disability determination, and provided an opinion dated August 24, 2011. (A.R. 43-47.) Dr. Ombres discussed Plaintiff's allegations of dizziness on changing positions, as well as an unsteady gait and ataxia. (A.R. 47.) Dr. Ombres found Plaintiff credible for her allegations and limitations at the time. (A.R. 44.) Dr. Ombres further found that one or more of Plaintiff's medically determinable impairments could reasonably be expected to produce her pain and other symptoms, and that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by the objective medical evidence alone. (A.R. 45.)

Dr. Ombres concluded that "durational to light at 4/2012 is appropriate." (A.R. 47.) She noted that she could not tell whether Plaintiff would still have some ataxia and dizziness a year from her brain tumor surgery. (A.R. 47.) Dr. Ombres found that Plaintiff has the following exertional limitations: (1) occasionally lift and/or carry twenty pounds; (2) frequently lift and/or carry ten pounds; (3) stand and/or walk for a total of six hours in an eight-hour workday; (4) sit for a total of six hours in an eight-hour workday; and (5) push and/or pull in an unlimited amount, other than shown for lift and/or carry. (A.R. 45-46.) Dr. Ombres further found that Plaintiff has the following postural limitations: (1) occasionally climb ramps/stairs; (2) never climb ladders/ropes/scaffolds; (3) occasionally balance; (4) occasionally kneel; (5) occasionally crouch; and (6) occasionally crawl. (A.R. 46.) Dr. Ombres added that Plaintiff has no manipulative, visual, or communicative limitations. (A.R. 46-47.) Plaintiff should, however, avoid all exposure to hazards, fumes, odors, dusts, gases, and poor ventilation. (A.R. 47.)

///

### b. *R. Jacobs, M.D.*

Dr. Jacobs reviewed Plaintiff's medical records for her disability determination on reconsideration, and provided two opinions dated March 13, 2012. (A.R. 56-60, 66-70.) Dr. Jacobs noted that he had received a new physician's statement stating that Plaintiff could perform regular or customary work by February 7, 2012. (A.R. 56, 66.) Plaintiff also provided an update in August 2011 stating that she was getting better in walking, preparing meals for herself, and bathing; however, she had lost her appetite when eating. (A.R. 53, 63.)

While Dr. Jacobs found that one or more of Plaintiff's medically determinable impairments could reasonably be expected to produce her pain and other symptoms, he did not find Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms to be substantiated by the objective medical evidence alone. (A.R. 57, 67.) He also only found Plaintiff's statements regarding her symptoms to be partially credible, noting that she was not fully cooperative during the orthopaedic consultative examination. (A.R. 57, 67.)

Dr. Jacobs found that Plaintiff has the following exertional limitations: (1) occasionally lift and/or carry fifty pounds; (2) frequently lift and/or carry twenty-five pounds; (3) stand and/or walk for a total of six hours in an eight-hour workday; (4) sit for a total of six hours in an eight-hour workday; and (5) push and/or pull in an unlimited amount, other than shown for lift and/or carry. (A.R. 58, 68.) Dr. Jacobs further found that Plaintiff has the following postural limitations: (1) occasionally climb ladders/ropes/ scaffolds; and (2) frequently balance, stoop, kneel, crouch and crawl. (A.R. 59, 68-69.) Dr. Jacobs added that Plaintiff has no manipulative, visual, communicative, or environmental limitations. (A.R. 59, 69.)

### c. *R. Mitgang, M.D.*

Dr. Mitgang reviewed Plaintiff's medical records and provided an opinion dated on or about June 23, 2012. (A.R. 403-404.) Dr. Mitgang stated that "[g]iven the significant distortion of multiple cranial nns., and the fact that there is residual tumor, the initial RFC

dated 08/24/2011 is given greater weight than the recon, and it is affirmed as written." (A.R. 404.)

**B.    The Hearing**

At the hearing on May 14, 2014, Plaintiff, who was represented by counsel, testified, along with the Alan Cummings, the vocational expert, and counsel.  (A.R. 23-40.)  Their testimony is summarized below.

### 1.    Plaintiff's Testimony

On May 14, 2014, Plaintiff testified at a hearing before ALJ Nguyen in San Diego, California.  (A.R. 27-37.)  Plaintiff testified to the following:

Plaintiff was born on March 15, 1951, and lives with her husband and two adult children.  (A.R. 27-28.)  Plaintiff is right-handed.  (A.R. 27.)  At home, Plaintiff does just a little cooking or cleaning.  (A.R. 28, 29.)  If she does it for a long time, she gets very tired and dizzy.  (A.R. 28.)  Plaintiff sometimes does laundry and cooking, but not much.  (A.R. 28.)  Plaintiff can only stand for ten or fifteen minutes at a time before her legs get tired.  (A.R. 28.)  Her child does the cooking for the family.  (A.R. 28.)

Plaintiff has a driver's license, but she has not driven since she got sick in 2011.  (A.R. 29.)  When she wants to go somewhere, her husband gives her a ride.  (A.R. 29-30.)  She does not take the bus.  (A.R. 30.)  Plaintiff cannot stay at home by herself, but her husband, who is retired, stays with her during the day.  (A.R. 30.)  She does not go grocery shopping by herself.  (A.R. 30.)

Plaintiff attended one or two years of college in Washington, and took classes in English.  (A.R. 30, 36-37.)  She is not presently working.  (A.R. 30-31.)  Plaintiff previously worked as a cashier and took care of two disabled people.  (A.R. 31.)  When she worked, she could speak English with people.  (A.R. 37.)  She stopped working when she found out she had a brain tumor.  (A.R. 31.)  Plaintiff had surgery to remove the tumor.  (A.R. 31.)  After the surgery, Plaintiff did not have much treatment because she lacked the financial resources.  (A.R. 31.)  One or two weeks after her initial surgery, Plaintiff had an infection and needed another surgery.  (A.R. 32.)

Plaintiff's eye still hurts and she vomits, feels dizzy, and sometimes cannot control herself when she wants to go to the restroom. (A.R. 32.) Plaintiff has seen a doctor for these conditions. (A.R. 32-33.) She takes medications on an as-needed basis when she vomits or gets dizzy. (A.R. 33.) Plaintiff also has prescription medications for her eyes. (A.R. 33.) She received the first prescription in April 2014. (A.R. 34.) Plaintiff had cataracts surgery on her right eye last month. (A.R. 34.) Plaintiff will eventually need surgery on her left eye too. (A.R. 34.)

Plaintiff cannot go back to work because her head still hurts when she moves and when she concentrates. (A.R. 34-35.) Plaintiff cannot move much. (A.R. 35.) She has had difficulty getting to see a doctor for these issues. (A.R. 35.) She finally saw a doctor at the beginning of the month. (A.R. 35.)

Lastly, the ALJ asked Plaintiff whether she can speak and understand English, because it seemed like she was saying she does not understand some of the things he was telling her at the hearing. (A.R. 37.) Plaintiff responded that after the surgery on her brain, she forgets many things and does not understand much now. (A.R. 37.)

### 2. Vocational Expert's Testimony

Alan Cummings, a vocational expert, also testified before the ALJ on May 14, 2014. (A.R. 37-39.) The ALJ asked Mr. Cummings three hypotheticals. (A.R. 38-39.) First, the ALJ asked Mr. Cummings to assume a person of the claimant's age, education, and work experience, who can perform work at the medium level of exertion. (A.R. 38.) The ALJ asked Mr. Cummings whether, at the medium level of exertion, past work would be available. (A.R. 38.) Mr. Cummings testified that there would be past work available. (A.R. 38.)

Second, the ALJ asked Mr. Cummings to modify the first hypothetical to involve a light level of exertion. (A.R. 39.) Mr. Cumming testified that past work would still be available. (A.R. 39.) Third, the ALJ asked Mr. Cummings to go back to the first hypothetical and assume the cashier position was not available. (A.R. 39.) He then asked whether any other work would be available. (A.R. 39.) Mr. Cummings testified that there

would be work available at the medium exertional level, including work as a "packager" and "cleaner." (A.R. 39.) Mr. Cummings testified that his testimony is consistent with the DOT [Dictionary of Occupational Titles]. (A.R. 39.)

Plaintiff's attorney asked Mr. Cummings whether Plaintiff could do any formal work as an unskilled worker. (A.R. 39.) Mr. Cummings testified that a cashier is unskilled work, so that would remain available. (A.R. 39.)

### 3. Plaintiff's Counsel's Testimony

When asked by the ALJ if he had anything to add, Plaintiff's counsel stated that Plaintiff's medical record supports grid rule 201.02, inability to do past work, based on her headaches and cognitive disorder. (A.R. 39-40.)

## C.    The ALJ's Findings

On June 13, 2014, the ALJ rendered an unfavorable decision regarding Plaintiff's applications for disability insurance benefits and supplemental security income benefits. (A.R. 7-21.) The ALJ first determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2016. (A.R. 12.) The ALJ then followed the five-step, sequential evaluation process in rendering his decision. (A.R. 12-17.) At step one, the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity since March 1, 2011, the alleged onset date." (A.R. 12.)

At step two, the ALJ concluded that Plaintiff has the following severe impairment: "left pontine mass status post craniectomy and debulking surgery." (A.R. 12.) The ALJ determined this impairment is severe because it more than minimally affects Plaintiff's ability to perform basic work activities. (A.R. 12.) However, the ALJ determined that the "medical and other evidence establish that [Plaintiff's] medically determinable impairment of cataracts causes only a slight abnormality that would have no more than a minimal effect on her ability to work" and was non-severe. (A.R. 12-13.) The ALJ also determined that there was a lack of objective evidence to substantiate the existence of a medically determinable impairment as to Plaintiff's alleged symptoms of dizziness, vomiting, and urinary incontinence. (A.R. 13.) The ALJ found that Plaintiff was not formally evaluated

for these symptoms, no medications were prescribed, and no objective medical evidence that documents a diagnoses exists.  (A.R. 13.)

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (A.R. 13.)  The ALJ noted that "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment in the Listing of Impairments." (A.R. 13.)

The ALJ then found that Plaintiff has the RFC to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).  (A.R. 13.)  The ALJ considered the Exertion Questionnaire completed by Plaintiff, dated February 6, 2012, in which she describes her symptoms and limitations.  (A.R. 14.)  Relying on the medical record and Plaintiff's testimony and statements, the ALJ found Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms less than fully credible.  (A.R. 14.)

The ALJ also reviewed and discussed Plaintiff's hospital records with regard to her brain tumor, Dr. Wirganowicz's consultative evaluation, the State agency medical consultants, and Dr. Nguyen's certifications.  (A.R. 14-15.)  The ALJ gave significant weight to the opinion of Dr. Wirganowicz and to the State agency medical consultants that opined Plaintiff was able to perform medium work.  (A.R. 15.)  The ALJ gave little weight to the State agency medical consultants that limited Plaintiff to light work, and the opinions of Dr. Nguyen.  (A.R. 15.)  In sum, the ALJ found that Plaintiff's RFC to perform the full range of medium work is supported by the evidence as a whole.  (A.R. 15.)  The ALJ further found that Plaintiff's "subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of symptoms." (A.R. 15-16.)

14

The ALJ then proceeded with step four of the sequential evaluation process. At this step, the ALJ concluded that Plaintiff is capable of performing past relevant work as a cashier. (A.R. 16.) The vocational expert testified that Plaintiff's past relevant work as a cashier, is a light, unskilled position, as generally performed pursuant to the DOT and as actually performed by Plaintiff. (A.R. 16.) The vocational expert further testified that a person with the same age, education, and work experience as Plaintiff, and an RFC as determined by the ALJ, could perform the past work of a cashier as actually performed by Plaintiff and as generally performed in the regional and national economy. (A.R. 16.)

Although Plaintiff is capable of performing past relevant work, the ALJ alternatively found that there are other jobs existing in the national economy that she is also capable of performing. (A.R. 16.) The ALJ then determined that based on an RFC for the full range of medium work, considering Plaintiff's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 203.14. (A.R. 17.)

Therefore, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 1, 2011, through the date of his decision. (A.R. 17.)

## IV.  DISCUSSION

Plaintiff argues that the ALJ committed reversible error by improperly considering the testimony of Plaintiff. (Mot. at 2-3.) Specifically, Plaintiff argues the ALJ failed to articulate sufficient reasons to find her not credible. (*Id*. at 3.) Defendant counters that the ALJ appropriately found Plaintiff's testimony not fully credible. (ECF No. 30-1 at 4-8.)

The credibility of a claimant's testimony regarding subjective pain is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an impairment or impairments that could reasonably be expected to produce *some degree* of the pain or other symptoms alleged. *Id.* (citing *Lingenfelter*, 504 F.3d at 1036). Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's

testimony about the severity of the pain or symptoms if he provides "specific, clear and convincing reasons" for doing so. *Id.* (citing *Lingenfelter*, 504 F.3d at 1036).

"In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

Moreover, the ALJ may not discredit a claimant's testimony of pain solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence"). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995); 20 C.F.R. § 404.1529(c)). Even if one or more reasons listed by the ALJ are invalid, so long as the ALJ provides some valid reasons, the ALJ's credibility determination will be upheld. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Here, the ALJ found Plaintiff's "left pontine mass status post craniectomy and debulking surgery" to be a severe impairment. (A.R. 12.) He then found that this

impairment "could reasonably be expected to cause some of the alleged symptoms." (A.R. 14.) However, he concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible to the extent they are inconsistent with the" RFC as determined by the ALJ. (A.R. 14.) Because the ALJ found Plaintiff met the first step of the test, the issue is whether the ALJ provided "specific, clear and convincing reasons" for the adverse credibility finding. *See Vasquez*, 572 F.3d at 591.[3] The Court finds he did not do so.

First, the ALJ found Plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms less than fully credible because "although the medical record showed evidence of brain tumor, many of [Plaintiff's] symptoms subsided after surgery." (A.R. 14.) The ALJ specifically noted that Plaintiff had not required significant treatment after her surgery and that the "medical record does not support the severity of symptoms alleged." (A.R. 14.) In reviewing Plaintiff's treatment records, the ALJ noted that her hospital medical records state that after brain surgery in May 2011, Plaintiff did physical and occupational therapy while in the hospital, and was considered to be progressing well and was stable. (A.R. 14.) Plaintiff also reported to be getting better with walking, preparing meals, and bathing in August 2011. (A.R. 14, 53.) The ALJ further gave significant weight to the opinion of consultative examiner Dr. Wirganowicz, dated February 11, 2012, who found that Plaintiff had a minimal limp in her left leg, and left-sided neck and shoulder pain that did not prevent her from lifting or carrying fifty pounds occasionally and twenty-five pounds frequently, and standing, sitting, or walking for six hours in a normal workday with appropriate breaks. (A.R. 15, 397.) The ALJ also gave significant weight to the State agency medical consultants who opined Plaintiff was able to perform medium work, because Plaintiff had no significant treatment after her brain

---

[3] The ALJ did not cite any evidence of malingering. Therefore, his adverse credibility findings may only be supported by "specific, clear and convincing reasons." *Vasquez*, 572 F.3d at 592.

surgery, and was able to occasionally cook and do laundry, and little weight to the opinions of the State agency medical consultants that limited Plaintiff to light work and the opinions of Dr. Nguyen. (A.R. 15.)

However, the medical record also states that Plaintiff was sent home from the hospital in May 2011 with home health care, not on her own, and after Plaintiff's initial surgery, she had a second surgery in July 2011, with which she experienced complications. (A.R. 32, 254, 360-368.) The medical notes of Dr. Nguyen, Plaintiff's primary treating physician, also show that Plaintiff complained of feeling fatigue and having mild headaches shortly after her surgery, and dizziness when she changed position, blurred vision, and eye pain in the following months. (A.R. 316, 374-375.) Although Dr. Nguyen originally anticipated that Plaintiff would be able to return to work on July 1, 2011, he later changed his diagnosis to February 7, 2012. (A.R. 350, 392.) In November 2011, Plaintiff complained of pain in her left shoulder, arm, leg, and ear, and tongue numbness. (A.R. 401.) The left arm pain continued in December 2011. (A.R. 401.) In February 2012, Plaintiff continued to complain of dizziness, and left neck, arm, and knee pain. (A.R. 400.) In addition, although the ALJ indicates otherwise, records indicate Plaintiff is taking, or has taken, prescription medications for her symptoms, including, but not limited to: Keppra, Cyclobenzprine, Meloxicam, Tylenol, Flexeril, and Motrin. (A.R. 13-15, 33, 227, 373-376, 400-402.) Therefore, before even considering Plaintiff's testimony, the medical record does not support the finding that Plaintiff's symptoms subsided after surgery.[4]

Plaintiff testified before the ALJ and in prior statements that her eye still hurts, her head still hurts when she moves, she cannot concentrate or understand much, she forgets things, and she vomits, feels dizzy and frequently fatigued, and sometimes cannot control herself when she wants to go to the restroom. (AR. 14, 32-35.) She also repeatedly stated

---

[4] Plaintiff further testified that she lacked the financial resources to pursue a lot of treatment after her surgery, and has had trouble getting referrals to see a doctor for her issues. (A.R. 31-35.)

that although she can do minimal housework, she cannot do so for very long before she gets tired and dizzy, and can only stand for ten or fifteen minutes at a time. (A.R. 28-29, 225-227.) She added that she cannot drive or be left home alone. (A.R. 29-30.) None of this testimony supports a finding that Plaintiff's symptoms subsided after surgery.

In reviewing the ALJ's decision, it appears the ALJ did not consider any of these symptoms to be related to Plaintiff's brain tumor, because he did not consider any of this medical evidence in his opinion. Rather, he made a separate determination that Plaintiff's symptoms following surgery for a brain tumor, including her eye pain, dizziness, vomiting, and urinary incontinence, were not medically determinable impairments. (A.R. 12-13.) He stated that Plaintiff was not formally evaluated for dizziness, although Plaintiff complained of dizziness on several occasions to her treating physician. (A.R. 13.) In addition, although Plaintiff frequently complained of eye pain to her primary physician, the ALJ found this complaint to be unsupported by the record and noted that no aggressive treatment was recommended or anticipated. (A.R. 12-13.)[5]

However, as Defendant stated in her cross-motion for summary judgment, Plaintiff was a "healthy individual" prior to her brain surgery. (ECF No. 30-1 at 5.) After her brain surgery, medical documentation shows that she continued to experience headaches, eye pain, dizziness, numbness of face and tongue, and pain on her left side. (A.R. 316, 349-350, 373-376, 392, 400-401.) In her applications for disability insurance benefits and supplemental security income benefits, Plaintiff only listed a brain tumor as her disabling medical condition, thus indicating that she believes these conditions are all linked. (A.R. 5, 148-166, 203-209, 236-239.) Moreover, Plaintiff's primary treating physician, Dr. Nguyen, links the pain, dizziness, numbness, and headaches to her brain tumor in his treatment notes and certifications. (A.R. 316, 349-350, 373-376, 392, 400-401.) There is

---

[5] Although Plaintiff testified that she had cataracts surgery in her right eye and requires surgery in her left one, there is no suggestion in the record that Plaintiff's claimed eye pain is connected to her cataracts. (*See* A.R. 33-34.)

no dispute that doctors did not entirely remove the tumor in her brain, and that Plaintiff's complaints, which are similar to those prior to surgery, have arisen continuously after surgery. (A.R. 259, 277, 404.) Thus, the ALJ's rationale for separating out Plaintiff's symptoms from her brain tumor and failing to fully address them in his analysis is unclear and unsupported by the record.

Based on the foregoing, the Court finds the ALJ's determination that Plaintiff's testimony was not credible because "many of [her] symptoms subsided after surgery," to be unsupported by the record and insufficient to meet the second step. (*See* A.R. 14.) Moreover, as Plaintiff's symptoms appear related to her brain tumor, which the ALJ found to be a severe impairment, he may not reject Plaintiff's "subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of the pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see also Rollins*, 261 F.3d at 856-57. The ALJ must specifically make findings which support his conclusion that Plaintiff's allegations of severity are not credible. *Id.*

As stated above, "[i]n weighing a claimant's credibility, the ALJ may consider [her] reputation for truthfulness, inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light*, 119 F.3d at 792; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (an ALJ may consider a claimant's daily activities in weighing the claimant's credibility). Aside from maintaining that the medical record does not support the severity of the symptoms alleged, the ALJ points to Plaintiff's daily activities, stating that Plaintiff "acknowledged she was able to perform activities that were within the residual functional capacity stated [in the ALJ's opinion]." (A.R. 14.) Again, the Court finds that the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

The ALJ specifically noted that Plaintiff admitted she was able to cook, garden, and do laundry, as well as pick up clothes and sweep the floor, and had a driver's license. (A.R.

14.) However, in picking these activities, the ALJ ignores the rest of Plaintiff's testimony, much of which the ALJ acknowledges in his opinion. The ALJ states:

> The claimant testified that she was unable to work because of head pain. She alleged she had difficulty moving and concentrating because her head hurt. She claimed she was unable to do household chores because of dizziness and fatigue. She described being able to stand for 10 to 15 minutes. The claimant reported that she was unable to be home alone, that her husband stayed with her. She also indicated that although she was able to grocery shop, she was unable to go alone. The claimant testified that she was able to do some cooking and laundry. She acknowledged that she had her driver's license.

(A.R. 14.)

Thus, although Plaintiff did testify that she does some cooking, cleaning, gardening, and laundry, she also repeatedly testified that she cannot do so for very long because she gets tired and dizzy and can only stand for ten or fifteen minutes at a time. (A.R. 28-29, 225-227.) This testimony is not inconsistent. Plaintiff also testified that she has near constant eye and head pain and has difficulty moving and concentrating, which the ALJ does not address. None of this testimony is consistent with someone who could perform activities that are within the RFC as determined by the ALJ. *See* 20 C.F.R. §§ 404.1567 and 416.967 (defining light and medium work). In addition, the ALJ cites Plaintiff having a driver's license as evidence that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms are less than fully credible. (A.R. 14.) However, Plaintiff also testified that although she has a driver's license, she has not driven since her injury, and cannot stay home alone and does not leave the house by herself. (A.R. 29-30.) Furthermore, Dr. Wirganowicz, whose opinion the ALJ gave significant weight, opined after administering a Visual Acuity Test, that Plaintiff "cannot visually go from one place to another without assistance." (A.R. 15, 398.)

The ALJ did not make any further assessment of Plaintiff's credibility. He did not address the fact that two State agency consultants found Plaintiff credible, or the fact that even the ALJ himself questioned whether Plaintiff was fully understanding his questions during the hearing. (*See* A.R. 37, 43-47, 403-404.) Thus, based on the foregoing, the Court

finds the ALJ erred by failing to provide "specific, clear and convincing reasons" for his adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

### A. Remand for Further Proceedings Is Appropriate

"[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998) (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). If the ALJ's decision "is not supported by the record, 'the proper course . . . is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. When, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citations omitted).

Here, as indicated above, the ALJ erred by failing to provide specific, clear and convincing reasons for his adverse credibility finding as to Plaintiff. Additional proceedings may be able to remedy this defect. Therefore, the Court finds remand for further proceedings is appropriate.

## V. CONCLUSION

After a thorough review of the record in this matter and based on the foregoing analysis, this Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant's cross-motion for summary judgment, and **ORDERS** the case **REMANDED** to the ALJ for further proceedings.

**IT IS SO ORDERED.**


**DATED: September 18, 2017**

Hon. Cynthia Bashant
United States District Judge